UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Melissa L. Anderson, | Civ. No. 19-53 (MJD/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| NAES Corporation, | |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| Mechanical Systems, Inc., | |
| Third-Party Defendant. | |

Michael A. Bryant, Esq., Bradshaw & Bryant PLLC, counsel for Melissa L. Anderson.

Scott P. Drawe, Esq., Drawe & Maland, counsel for NAES, Inc.

Timothy S. Poeschl, Esq., Grotefeld Hoffman, counsel for Mechanical Systems, Inc.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendant and Third-Party Plaintiff NAES Corporation's ("NAES") First Motion for Partial Summary Judgment (Doc. Nos. 40, 41) and Motion to Strike Pleading (Doc. No. 52). The Court heard oral argument on NAES's First Motion for Partial Summary Judgment at a hearing on May 4, 2020. (Doc. No. 57, Min. Entry.) For the reasons that follow, this Court recommends that (1) NAES's Motion

to Strike Pleading be denied; (2) the errata sheet at issue be excluded as untimely; and (3) NAES's First Motion for Partial Summary Judgment be denied.

## I. Background

On December 6, 2017, Jeffrey C. Anderson—a Mechanical Systems, Inc. ("MSI") employee—was repairing an inlet dampener at the Benson Power Plant. (Doc. No. 1-1, Compl. ¶ 1.) As Mr. Anderson was working, a large piece of ash fell on him, killing him. (*Id.* ¶¶ 2–3.) Mr. Anderson's spouse, Melissa L. Anderson, brought suit against Benson Power, LLC and NAES—the operator of the Benson Power Plant—alleging that Mr. Anderson died as a direct result of their negligence. (*Id.* ¶¶ 5–10.) NAES subsequently filed a third-party complaint against MSI, alleging that MSI's negligence was the direct cause of Mr. Anderson's death, and demanding contribution in the event NAES is found to be liable in this action. (Doc. No. 20, Third-Party Compl. ¶¶ 5–6.) Pursuant to the parties' stipulation, Benson Power LLC was dismissed from this matter on January 7, 2020. (Doc. Nos. 34, 38.)

On July 24, 2019, NAES served a Rule 30(b)(6) Deposition Notice on MSI requesting that it produce a corporate representative to testify on its behalf. (Pumper Dep. 2–3.) MSI produced Joel L. Pumper, its owner and CEO. (*Id.* at 1, 5.) The 30(b)(6) deposition took place on August 8, 2019, and the transcript was made available on August 19, 2019. (Pumper Dep. 96.) Mr. Pumper did not submit his Errata Sheet until October 9, 2019, twenty-two days late. (Errata Sheet 1.)

On March 13, 2020, NAES filed its First Motion for Partial Summary Judgment against MSI, arguing that in the course of a Rule 30(b)(6) deposition, Joel Pumper—the

owner and CEO of MSI—conceded that NAES's Purchase Order Terms and Conditions ("Terms and Conditions") applied to the work Mr. Anderson was performing when he was killed.[1] (*See* Doc. No. 40, First Mot. for Partial Summ. J.; Doc. No. 41, Mem. in Support; Doc. No. 42-1, Pumper Dep.) In opposition, MSI argued that the statements NAES relies on from Mr. Pumper's deposition do not reflect the record as a whole, that the statements NAES cites in support of its argument were a result of Mr. Pumper's confusion, and that Mr. Pumper's errata sheet clarifies those statements. (*See* Doc. No. 55, Mem. in Opp'n; Doc. No. 48-4, Errata Sheet.) NAES responded by moving to strike the Errata Sheet from the record, and focused much of its Reply memorandum arguing why the Errata Sheet should be excluded. (*See* Doc. No. 52, Mot. to Strike; Doc. No. 53, Reply.)

## II. Analysis

### A. The Errata Sheet

NAES moves to strike the Errata Sheet from the record. (Doc. No. 55.) Separately, NAES objects to the introduction of the Errata Sheet into evidence and requests that the Court disregard it as untimely and pursuant to the sham affidavit rule. (Reply 4.) NAES candidly admits that the Rules do not authorize its motion to strike such a document, but argues that Federal Rules of Civil Procedure 30(e) and 56(c) require exclusion of the

---

[1] According to NAES, it was in these Terms and Conditions that MSI agreed to indemnify NAES against MSI's negligence, procure insurance naming Benson Power and NAES as additional insureds, and include a waiver of subrogation provision in favor of Benson Power and NAES on any insurance policies procured or maintained by MSI. (Third-Party Compl. ¶¶ 7–9; Mem. in Support 2.)

3

Errata Sheet. (*Id.* at 4 n.1.) MSI responds by requesting that the Court extend the deadline to submit the Errata Sheet because MSI's failure to act in a timely fashion "was the result of excusable neglect." (Doc. No. 55, MSI's Opp'n to Mot. to Strike 3 (quoting Fed. R. Civ. P. 6(b)(2)).) Because the Motion to Strike Pleading (Doc. No. 55) lacks a basis in the rules, this Court recommends that it be denied. Notwithstanding that recommendation, however, this Court also recommends that MSI's request to extend the deadline to submit the Errata Sheet also be denied, and the Errata Sheet excluded from the record, for the reasons that follow.[2]

Federal Rule of Civil Procedure 30(e) requires that alterations to deposition testimony submitted via an errata sheet must be provided within 30 days of notification that a transcript of the deposition is available. Courts in this district have found that errata sheets submitted after that deadline may nonetheless be accepted if the delay was the result of excusable neglect. *See, e.g.*, *ADT Sec. Servs., Inc. v. Swenson*, No. CIV 07-2983 JRT/AJB, 2010 WL 276234, at *8 (D. Minn. Jan. 15, 2010), *aff'd in part, rev'd in part*, No. CIV. 07-2983, 2010 W 2954545 (D. Minn. July 26, 2010) (granting motion to correct testimony).[3] When analyzing a claim of excusable neglect, the Court takes account of all relevant circumstances including: "the danger of prejudice to the nonmovant, the length

---

[2] Because this Court concludes that MSI's request to extend the deadline to submit the Errata Sheet should be denied, it declines to address NAES's argument concerning the sham-affidavit rule.

[3] Whether the Errata Sheet can be submitted after the deadline is a non-dispositive decision for the magistrate judge; however, because this decision is intertwined with the dispositive motion, this Court presents its recommendation on this issue to the District Court to consider.

of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995) (quotation omitted).

This Court concludes that these factors do not weigh in favor of accepting the Errata Sheet. Mr. Pumper's deposition was conducted on August 8, 2019, and the transcript was made available on August 19, 2019. (Pumper Dep. 96.) Mr. Pumper did not sign and submit his Errata Sheet until October 9, 2019. (Errata Sheet 1.) MSI did not notify the Court of the existence of the Errata Sheet until April 3, 2020, and did not request an extension of the deadline to submit it until April 24, 2020, only after it was challenged by NAES. Despite this late notice, and even later request, this Court concludes that accepting the Errata Sheet would not prejudice NAES. As to the second factor, the length of the delay of the completion of the Errata Sheet itself was minimal— only 22 days—but the length of time it took MSI to move for the Errata Sheet to be accepted was not. The impact of that delay on judicial proceedings is now readily apparent, with both the parties' and the Court's resources being expended on arguing and deciding the issue. This factor weighs against MSI.

The reason for the delay also weighs against MSI: the failure to timely submit the Errata Sheet is attributed to a mere calendar error (Opp'n to Mot. to Strike 6), an issue well within MSI's control. The final factor, whether MSI acted in good faith, weighs neither for or against MSI. This Court is satisfied that Mr. Pumper himself acted in good faith in filling out the Errata Sheet, but MSI's dilatory tactics regarding the motion

5

required to admit it—a months-long delay followed by a passing mention in MSI's Response to NAES's Motion for Partial Summary Judgment, and only a formal request when challenged directly by NAES—should not be rewarded.[4]

Accordingly, this Court recommends MSI's request to extend the deadline to submit the Errata Sheet be denied.

### B. Motion for Partial Summary Judgment

#### 1. Standard of Review

Summary judgment is appropriate if the evidence in the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Thomas v. Heartland Emp't Servs., LLC*, 797 F.3d 527, 529 (8th Cir. 2015). The moving party bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011). If the moving party does so, the nonmoving party "may not . . . rest on mere allegations or denials," but must point to evidence "of specific facts which create a genuine issue of material fact." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The mere existence of a factual dispute will not defeat a motion for summary judgment unless that dispute is "genuine," meaning that "the evidence is such

---

[4] Setting aside the question of whether Mr. Pumper was adequately prepared to testify as a Rule 30(b)(6) witness on behalf of MSI, the Court observes that MSI's counsel's conduct during the deposition is not a model for how to defend a deposition. (*See, e.g.*, Pumper Dep. 46–52.)

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 2. The Rule 30(b)(6) Deposition

On July 24, 2019, NAES served a Rule 30(b)(6) Deposition Notice on MSI requesting that MSI produce a corporate representative to testify as to a number of issues, including the following:

- The handling of all Purchase Orders and the Terms and Conditions accompanying each Purchase Order for work performed at the Benson Power Plant;

- All invoices sent to NAES and/or Benson Power for work performed at the Benson Power Plant;

- All contract terms and conditions for work MSI performed at the Benson Power Plant; and

- All contract terms and conditions for work MSI performed at the Benson Power Plant on or about December 6, 2017.

(Pumper Dep. Exs. 2–3.) MSI chose to have Mr. Pumper, its owner and CEO, testify as its 30(b)(6) witness, and his deposition was taken on August 8, 2019. (Pumper Dep. 1, 5.)

According to Mr. Pumper, when MSI did work for NAES, the first step was that NAES would contact MSI regarding the scope of the work to be performed. (*Id.* at 87.) MSI's work for NAES was performed on a time and materials basis about half the time. (*Id.* at 86.) After completing a project, MSI would issue an invoice for its work to NAES. (*Id.* at 88.) Finally, NAES would issue a Purchase Order and payment, and sometimes that Purchase Order would have Terms and Conditions appended to it. (*Id.* at 88, 91.)

In those passages relevant to NAES's First Motion for Partial Summary Judgment, Mr. Pumper gave inconsistent accounts of whether the Terms and Conditions applied to

7

MSI's work at the Benson Power Plant. For example, Mr. Pumper appeared to testify that in his role as CEO, he never saw NAES's Terms and Conditions attached to a purchase order:

> Q: And when you reviewed the purchase order, did you review both the purchase order and the purchase order terms and conditions?
>
> . . .
>
> A: No, I didn't.
>
> Q: So the only document you saw was the purchase order; correct?
>
> A: The first page right here (indicating).
>
> Q: Okay.
>
> A: Correct.
>
> Q: You were never shown by anyone at MSI the purchase order terms and conditions --
>
> A: Correct.
>
> Q: -- correct?
>
> A: And I would be the guy looking at it.

(Pumper Aff. 19.) But later, Mr. Pumper testifies that he had been aware of the Terms and Conditions "when we started working years ago for Benson Power," but he then immediately reverses himself again, stating that the first time he saw the Terms and Conditions was on the morning of the deposition. (*Id.* at 31–32.) Mr. Pumper also testifies that MSI never received a purchase order for the work performed on the date that Mr. Anderson was killed working at the power plant. (*Id.* at 84.)

Mr. Pumper's testimony is also inconsistent concerning whether MSI ever agreed to be bound by NAES's Terms and Conditions. For example,

> Q: So it is your testimony as the designated representative of MSI that the purchase order terms and conditions that you received from NAES have changed over time; correct?
>
> A: Correct.
>
> Q: But that you received purchase order terms and condition on both the first and last purchase order you received from NAES, correct?
>
> A: Correct.
>
> Q: And you agreed to be bound by those terms and conditions; is that also correct?
>
> A: Yes.
>
> . . .
>
> Q: And so in performing work under the purchase order, MSI agreed to be bound by the terms and conditions attached to the purchase order; correct?
>
> A: Correct.
>
> . . .
>
> Q: And the terms and conditions would govern all of the purchase orders, correct?
>
> A: Correct.

(Pumper Dep. 38, 53, 67.) Again, however, Mr. Pumper later backtracked on his prior testimony:

> Q: When you look at the [purchase] order and the sequence of when you got the purchase order, did you agree to be bound by . . . the terms and conditions?
>
> . . .

A: Yes. I -- I was -- again, that's very typical. It's not -- obviously, when I don't have the conditions and terms before we do the work and we invoice, how do I agree to terms and conditions I don't have when we do the work? I mean, I -- I -- I'm confused, I guess, you guys.

Q: Right.

A: It's obvious I can't understand terms and conditions because I don't even have them.

Q: You didn't have the terms and conditions when you --

A: Correct.

Q: -- invoiced the --

A: Yes.

(*Id.* at 82–83.)

### 3. The Terms and Conditions

NAES seeks partial summary judgment from the Court on the question of whether MSI agreed to be bound by NAES's Terms and Conditions. NAES argues that while MSI never signed the Terms and Conditions, "[t]he unequivocal and undisputed testimony of Mr. Pumper negates any argument that the lack of a signed copy . . . creates a disputed issue of material fact regarding whether MSI agreed to be bound by these Terms and Conditions." (Mem. in Support 11–12.) NAES believes that Mr. Pumper's testimony amounts to an acknowledgment by MSI "that it was bound by the Purchase Order Terms and Conditions and that those Terms and Conditions governed all work that MSI performed at the Plant." (*Id.* at 12 (citing Pumper Dep. 38, 48–53, 67).) This Court disagrees.

10

As outlined above, Mr. Pumper's testimony is internally inconsistent on the question of whether MSI ever agreed to be bound by the Terms and Conditions. From Mr. Pumper's testimony, it is frankly unclear whether he as CEO and owner of MSI had ever even seen the Terms and Conditions before the morning of the 30(b)(6) deposition. (*Compare* Pumper Dep. 19, 32 *with id.* at 31.) Moreover, while Mr. Pumper acknowledges that MSI agreed to be bound by the Terms and Conditions (*id.* at 38, 53, 67), he also appears to state the opposite later when he claims that he does not know how he could have agreed to be bound by the Terms and Conditions if he did not have them in hand when MSI performed the work. (*Id.* at 82–83.)

In sum, Mr. Pumper's testimony provides no clear answer to the question of whether MSI ever agreed to be bound by the Terms and Conditions. Accordingly, NAES's First Motion for Partial Summary Judgment should be denied.

### III. Conclusion

For the foregoing reasons, this Court recommends that NAES's Motion to Strike Pleading and First Motion for Partial Summary Judgment be denied; this Court also recommends that MSI's request to extend the deadline to submit the Errata Sheet be denied and the Errata Sheet excluded from the record.

### RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. NAES's First Motion for Partial Summary Judgment (Doc. No. 40) be **DENIED**;

2. NAES's Motion to Strike Pleading (Doc. No. 52) be **DENIED**;

3. MSI's request to extend the deadline to submit the Errata Sheet be **DENIED**; and

4. Judgment be entered accordingly.

Dated: June 8, 2020              *s/ Becky R. Thorson*
                                 BECKY R. THORSON
                                 United States Magistrate Judge

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).